IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, ROCK ISLAND DIVISION

| | |
|---|---|
| SCOTT JEFFREY DEVOOGHT, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 18-cv-4197 |
| IOWA HEALTH SYSTEMS d/b/a UNITYPOINT HEALTH and TRINITY MEDICAL CENTER d/b/a/ QCM PAIN MANAGEMENT, | ) |
| Defendants. | ) |

## OPINION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Plaintiff Scott Jeffrey DeVooght's Motion for Summary Judgment (d/e 84) (DeVooght Motion) and Defendants Iowa Health Systems d/b/a UnityPoint Health (UnityPoint) and Trinity Medical Center d/b/a QCM Pain Management's (Trinity) Motion for Summary Judgment (d/e 81) (Defendants' Motion). The parties consented to proceed before this Court. Consent to the Jurisdiction by a United States Magistrate Judge and Reference Order entered February 11, 2020 (d/e 48). For the reasons set forth below, the Court ALLOWS the Defendants' Motion and DENIES the DeVooght Motion.

STATEMENT OF FACTS

From 2001 to 2013, DeVooght was a patient of Dr. Kerry Panozzo, M.D., at Defendant Trinity's Pain Management Center (Pain Clinic). Dr. Panozzo prescribed hydrocodone, a controlled substance pain medication, to DeVooght for pain. See Defendants' Motion, Exhibit 1, Deposition of Jeffrey DeVooght (DeVooght Deposition), at 23-24, 26.

From July 2012 through November 2012, DeVooght received multiple prescriptions for controlled substance pain medication from several different doctors. On July 25, 2012, Dr. Panozzo prescribed a 30-day supply of hydrocodone for DeVooght. On August 6, 2012, Dr. Charles Herbert Lemon, M.D., prescribed a three-day supply of hydrocodone for DeVooght. On August 15, 2012, Dr. Michael Wenck-Todd, M.D., prescribed a six-day supply of tramadol. On September 22, 2012 and October 19, 2021, Dr. Panozzo renewed 30-day prescriptions for hydrocodone. On October 25, 2012, Dr. Andrew Stevenson, D.O., prescribed a five-day supply of oxycodone. On November 16, 2012, Dr. Panozzo renewed DeVooght's prescription for hydrocodone. On November 30, 2012 nurse practitioner Sommer Livengood, NP, prescribed a 15-day supply of hydrocodone. On December 12, 2012, Dr. Panozzo renewed the 30-day prescription of hydrocodone. Defendants' Motion,

Exhibit 5, and <u>DeVooght Motion</u>, Exhibit marked as Defendant's Exhibit 8, <u>Prescription Monitoring Program Patient Search for DeVooght dated August 5, 2013 (DeVooght Prescription Search)</u>; see <u>DeVooght Deposition</u>, at 28-33.

In 2012, nurse practitioner Livengood became DeVooght's primary care provider. Livengood also worked for Defendant Trinity. On July 3, 2013, Dr. Panozzo prescribed a 30-day supply of hydrocodone for DeVooght. On July 31, 2013, Livengood prescribed a 30-day supply of hydrocodone for DeVooght. Livengood stated in her treatment note, "pc to pharm to make sure no other doc's giving narc for pain relief. #60 called in of hydrocodone for pt, he did recently get a fill from dr. panozzo at beginning of the month. I will not fill this if continued fills from pain clinic." <u>DeVooght Motion</u>, Exhibit marked as Defendant's Exhibit 7, <u>Treatment Note from July 31, 2013 Office Visit</u>, at DeVooght 03407, and <u>DeVooght Prescription Search</u>.[1]

On August 8, 2013, Dr. Panozzo sent DeVooght a letter (2013 Letter). The 2013 Letter stated, in part:

Dear Scott,

This letter is to notify you that Dr. Kerry Panozzo, MD is withdrawing from providing further medical services to you for

---

[1] The page number is a Bates Stamp page number.

> receiving multiple prescripts from other physicians and pharmacies. You should place yourself under the care of another physician, other than Dr. Panozzo or any other physicians at the Trinity Pain Management Center. If you so desire, we will be available to provide professional services to you for the thirty (30) days after receipt of this letter. This will give you time to select a physician of your choice from other practitioners in the area. Trinity Healthtouch at 309-779-2000 can offer you the telephone numbers of physician referral agencies. Additional pain centers for your consideration include Mississippi Valley Surgery Center Pain Clinic at 563-344.6600, Genesis Pain Clinic at 563-421- 3555, or Iowa City Pain Clinic at 563-356-2320. If we can facilitate the referral process please contact our office.
>
> With your written consent, we will make available to a physician of your choice, your case history and the information regarding the diagnosis and treatment you have received from us.

Defendants' Motion, Exhibit 6 and DeVooght Motion, Exhibit marked as Defendant's Exhibit 3, 2013 Letter.

On November 8, 2014, DeVooght filed a claim with the Social Security Administration for Disability Insurance Benefits and Supplemental Security Income benefits (collectively Disability Benefits). He alleged that he became disabled on May 19, 2011. DeVooght subsequently amended his applications to allege that he became disabled on February 8, 2014. Defendants' Motion, Exhibit 2, and DeVooght Motion, Exhibit marked as Defendant's Exhibit 1, Notice of Unfavorable Decision and Decision of the

Administrative Law Judge (ALJ) dated November 24, 2017 (ALJ Decision), at 4.[2]

On December 8, 2014, DeVooght went back to the Pain Clinic to see Dr. Archanga Wagle, M.D. Dr. Wagle worked for Defendant UnityPoint. Dr. Wagle's treatment record from this visit stated, in part,

> Prescribe Tramadol three times daily. Call patient after obtaining results of urine drug screen to pick up his medication.
>
> Instructed patient to bring in his medication bottle at his next visit due to previous issues receiving narcotics from multiple providers. Patient had been discharged form (sic) this clinic in 2012 by Dr. Panozzo due to receiving multiple opioid prescriptions from three different providers. Educated patient about contract and notified him that we would give him a second chance.

DeVooght Motion, Exhibit marked as Defendant's Exhibit 2, December 8, 2014 Treatment Note. That same day, DeVooght signed a Pain Management Clinic Patient Treatment Contract with the Pain Clinic (2014 Contract). DeVooght Motion, Exhibit marked Defendant's Exhibit 4, 2014 Contract.

On March 11, 2015, the Social Security Administration initially denied DeVooght's application for Disability Benefits. On September 17, 2015, the Social Security Administration denied DeVooght's application for Disability

---

[2] The Court uses the Social Security Administration Exhibit pagination for the ALJ Decision located in the upper righthand corner of each page. The ALJ Decision was Exhibit No. B11A in the record of DeVooght's Social Security Administration proceeding.

Benefits on reconsideration. On October 16, 2015, DeVooght submitted a written request to the Social Security Administration for a hearing on his claim for Disability Benefits before an ALJ. ALJ Decision, at 4.

On November 1, 2016, DeVooght signed a Pain Contract (2016 Contract) at the request of Livengood. Amended Complaint (d/e 37), Exhibit D, 2016 Contract.

On May 19, 2017, the ALJ held an evidentiary hearing on DeVooght's claim for Disability Benefits. ALJ Decision, at 4. DeVooght submitted or informed the ALJ about all written evidence at least five business days before the date of the hearing. Id. On November 27, 2017, the ALJ issued his decision. ALJ Decision, at 20. The ALJ determined that DeVooght was not disabled during the relevant period from February 8, 2014 to the date of the ALJ Decision. Id. In discussing DeVooght's medical records, the ALJ stated,

> The claimant was prescribed hydrocodone twice per day. However, he was discharged from their care after he was receiving pain medications from multiple sources in violation of his medication contract. (see Ex. 5F p.26).

ALJ Decision, at 11. The ALJ's citation to "Ex. 5F p. 26" referred to a copy of Dr. Wagle's December 8, 2014 Treatment Note that was included in the evidence before the ALJ. See December 8, 2014 Treatment Note; DeVooght Deposition, at 51.

On August 27, 2018, DeVooght sent a letter to the Pain Clinic (2018 Letter).  DeVooght discussed the ALJ Decision, in particular the ALJ's quoted statement that DeVooght was discharged from the Pain Clinic for receiving pain medications from multiple sources in violation of his pain contract.  DeVooght concluded the 2018 Letter with the following:

> Mr. DeVooght obtained complete medical records and could not locate a medication contract.
>
> Since your office supplied this detrimental information to the Social Security Administration and it was used to support the denial of benefits, please do one of the following:
>
> 1. Provide a copy of the signed medication contract you cited in your testimony.
>
> 2. Provide a letter stating, Mr. DeVooght did not have a contract with your office.
>
> Please send response to: Scott J. DeVooght, 819-47th Street, Moline, IL 61265 by September 10, 2018.
>
> If information Is not provided by that date, you will be contacted by Mr. DeVooght's legal representative.

DeVooght Motion, Plaintiff's Exhibit 2, 2018 Letter, at 2.  The Pain Clinic responded by sending DeVooght a copy of the 2016 Contract.  Amended Complaint, attached Memorandum in Support of Plaintiff's Complaint, at 5 and Exhibit D, 2016 Contract.[3]

---

[3] The Court cites to the pagination from the Court's CM/ECF system because DeVooght did not paginate the Amended Complaint or the Memorandum in Support of Plaintiff's Complaint.

ANALYSIS

Both Plaintiff DeVooght and Defendants move for summary judgment. At summary judgment, the moving party must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to non-moving party. Any doubt as to the existence of a genuine issue for trial must be resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once the moving party has met this initial burden, the non-moving party must present evidence to show that issues of fact remain with respect to an issue essential to non-moving party's case, and on which the non-moving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In this case, the undisputed facts show that Defendants are entitled to summary judgment.

DeVooght alleges claims of libel and slander against Defendants. Amended Complaint (d/e 37) ¶¶ 4, 6-8. Libel and slander are forms of defamation. DeVooght has the burden at summary judgment to present evidence on each element of his defamation claim. The elements of defamation (either libel or slander) are: (1) the defendant made a false

statement concerning the plaintiff; (2) there was an unprivileged publication to a third party with fault by the defendant; and (3) the publication caused damage to the plaintiff.  Solaia Technology, LLC v. Specialty Pub. Co., 221 Ill.2d 558, 579, 852 N.E.2d 825, 839 (Ill. 2006).

The statute of limitations for defamation is one year in Illinois.  735 ILCS 5/13-201.  The statute of limitations for defamation begins to run on the date the allegedly defamatory statement was published.  Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc., 61 Ill.2d 129, 131-32, 334 N.E.2d 160, 161 (1975); Ciolino v. Simon, 2020 Il App (1st) 190181 ¶ 42, __ N.E.3d __, 2020 WL 8613519 at *7 (Ill. App. 1st Dist. 2020). DeVooght submitted or informed the ALJ of all written evidence for his claim for Disability Benefits, which would include medical records, at least five business days before the hearing. ALJ Decision, at 4; see 20 C.F.R. §§ 404.935(a) and 416.1435(a) (Claimant must submit or inform the ALJ about any written evidence at least five business days before the hearing.).[4]

---

[4] The Court does not decide whether the Defendants published records.  The ALJ stated that DeVooght provided records or informed the ALJ about the records.  DeVooght could have informed the ALJ that the Pain Clinic had records and authorized the ALJ to request the records.  If DeVooght provided the records to the ALJ, then the Defendants may not have published them. See Restatement (Second) of Torts § 577, comment *m* (1977) (A publication did not occur if defamed person communicated the statement to a third party except if "the defamed person's transmission of the communication to the third person was made . . . without an awareness of the defamatory nature of the matter and if the circumstances indicated that communication to a third party would be likely, a publication may properly be held to have occurred.").

The Court takes judicial notice that May 12, 2017 was five business days before the May 19, 2017 hearing. Thus, any publication of a statement by the Defendants in the medical records to the ALJ occurred no later than May 12, 2017. DeVooght filed this action more than a year later on September 26, 2018. As such, the action is barred by the statute of limitations. Defendants are entitled to summary judgment.

Even if DeVooght's claim was not barred by the statute of limitations, DeVooght has presented no evidence that the Defendants made a false statement. DeVooght argues that the Defendants falsely stated to the ALJ that the Pain Clinic discharged DeVooght from care because he violated a medication contract. No evidence shows that the Defendants made this statement. The ALJ made an error; he incorrectly stated in the ALJ Decision that DeVooght violated a medication contract. The ALJ cited Dr. Wagle's December 8, 2014 Treatment Note to support his incorrect statement, but, Dr. Wagle's December 8, 2014 Treatment Note did not state that DeVooght violated medication contract. The note stated:

> Patient had been discharged form (sic) this clinic in 2012 by Dr. Panozzo due to receiving multiple opioid prescriptions from three different providers. Educated patient about contract and notified him that we would give him a second chance.

<u>December 8, 2014 Treatment Note</u>. Dr. Wagle only stated that Dr. Panozzo discharged DeVooght from care at the Pain Clinic for getting

multiple opioid prescriptions.[5]  The 2013 Letter corroborates the accuracy of that statement.  Dr. Wagle then stated that he educated DeVooght about medication contracts.  That same day, DeVooght signed the 2014 Contract.  Neither Dr. Wagle, nor Dr. Panozzo, stated that DeVooght breached a medication contract.  DeVooght has failed to present evidence on the essential element of his claim that the Defendants made a false statement.

      DeVooght argues that Dr. Panozzo used language in the 2013 Letter that implied a medication contract existed.  The Court disagrees.  Dr. Panozzo nowhere in the letter mentioned an agreement with DeVooght.  Dr. Panozzo only stated that he no longer would treat DeVooght because DeVooght secured pain medication prescriptions from multiple sources.  DeVooght also presents no evidence that the ALJ saw Dr. Panozzo's 2013 Letter.  The ALJ cited Dr. Wagle's December 8, 2014 Treatment Note as the evidence for the ALJ's erroneous statement.  The ALJ made no mention of the 2013 Letter.  As discussed above, Dr. Wagle did not say that DeVooght violated a medication contract.  The ALJ apparently presumed DeVooght breached a medication contract.  The ALJ's erroneous presumption is not the fault of the Defendants.

---

[5] Dr. Wagle inaccurately stated that Dr. Panozzo stopped treating DeVooght in 2012 rather than 2013. The error in the date was not material to DeVooght's claims.

DeVooght also argues that his 2018 Letter put the Defendants on notice of the erroneous statement in the ALJ Decision and that the Defendants are liable because the Defendants did not correct the ALJ's error. DeVooght argues, "The Defendant made no attempt to correct the false information. By not correcting the false information, the Defendant's negligence, in essence, was confirming information." DeVooght Motion, Statement of Facts ¶ 19. No evidence shows that the Defendants did anything to confirm the accuracy of the ALJ Decision. Furthermore, DeVooght presents no evidence that the Defendants published this supposed confirmation of the ALJ's erroneous statement to anyone. Without a publication to a third party, DeVooght has no defamation claim. Solaia Technology, Inc., 852 N.E.2d at 839.

Defendants note that DeVooght asserted in his deposition that Defendants' employee nurse Kathleen Metz, RN, also made a false statement about DeVooght. Defendants' Motion, at 5-6 and Exhibit 1, Deposition of Scott Jeffrey DeVooght, at 22. DeVooght, however, alleged no claims in his Amended Complaint based on any statements by Metz, and DeVooght did not refer to any false statements by Metz in the DeVooght Motion. DeVooght also did not identify the nature of Metz'

alleged false statement in his deposition.  <u>Deposition of Scott Jeffrey DeVooght</u>, at 22.

In light of DeVooght's statement in his deposition about Metz, however, Defendants submitted an affidavit of Metz.  Metz states that DeVooght spoke to Defendants' staff on two occasions in 2020.  The first time he spoke to other members of Defendants' staff.  He requested a pain contract dated August 8, 2013 or before.  The second time DeVooght spoke to Metz.  She informed DeVooght that a contract prior to 2014 could not be located, but his medical records contained Dr. Panozzo's 2013 Letter.  <u>Defendants' Motion</u>, Exhibit 7, <u>Affidavit of Kathleen Metz (Metz Affidavit)</u> ¶¶ 5-7.  Also, Metz only spoke to DeVooght about this matter; she did not speak to anyone else about her conversation with DeVooght.  Metz Affidavit ¶¶ 7-13.  DeVooght's response to Defendants' Motion disputed the dates of his two visits in 2020, but substantially agreed with Metz regarding

her statements to him.[6]  Metz, therefore, made no false statement to DeVooght.[7]

The undisputed evidence shows that Defendants did not say anything false about DeVooght.  The evidence shows that the ALJ made an error, not the Defendants.  The Defendants are not liable for the ALJ's error.  Furthermore, DeVooght's defamation claim is barred by the statute of limitations.  The Defendants are entitled to summary judgment on DeVooght's defamation claim.

DeVooght indicates in The DeVooght Motion that the evidence also supports a claim for negligence against Defendants. See DeVooght Motion,

---

[6] DeVooght stated:
> Plaintiff would like to begin by addressing the Affidavit of Kathleen Metz (Defendant's Exhibit #7) submitted in the Defendant's Motion for Summary Judgement and make the following correction on item #5. The Plaintiff did not visit the Defendant on March 2 or March 9, 2020. The Plaintiff went to the pain clinic twice on February 24, 2020 and spoke with Ms. Metz on the second visit. Additionally, Ms. Metz agreed that no pain medication contract could be found at the time the pain clinic sent the Plaintiff a letter dated August 8, 2013 (Exhibit A). The letter notified the Plaintiff that the Defendant would no longer provide care to the Plaintiff because he was receiving multiple prescriptions from multiple physicians. Although there was no pain medication contract, Ms. Metz declined to provide a letter to the Plaintiff stating that he did not violate a pain medication contract.

Plaintiff's Answers to Defendant's Motion for Summary Judgment, at 2.

[7] DeVooght stated for the first time in his Reply that an unidentified staff member of Defendants stated in February 2020 that a computer entry on August 8, 2013 contained a false statement that DeVooght had been discharged as a patient for violating a pain contract.  Reply in Support of Plaintiff's Motion for Summary Judgment (d/e 92) (Reply), at 2.  DeVooght never mentioned such a computer entry in his Amended Complaint or in the DeVooght Motion.  A party may not raise new matters for the first time in a reply; matters raised for the first time in a reply are forfeited.  Carter v. Tennant Co., 383 F.3d 673, 679 (7th Cir. 2004); Autotech Technologies Ltd. Partnership v. Automatondirect.com, Inc., 235 F.R.D. 435, 437 (N.D. Ill. 2006).  DeVooght also presented no evidence to support the statement in the Reply about the claimed computer entry.  Unproven assertions are not competent to establish an issue of fact at summary judgment.  Fed. R. Civ. P. 56(c).  Finally, DeVooght did not present evidence that the claimed computer entry was ever published.  The ALJ made no reference to any computer entry. The ALJ cited Dr. Wagle December 8, 2014 Treatment Note as the basis for his erroneous statement in the ALJ Decision.  The Court will not consider DeVooght's unproven, forfeited matter about an alleged computer entry.

Statement of Facts ¶ 19 ("The Defendant made no attempt to correct the false information. By not correcting the false information, the Defendant's negligence, in essence, was confirming information."); see also Motion to Deny Defendant's Motion to Leave (d/e 90) ("This matter before the Court is Plaintiff, Scott J. DeVooght, defamation and negligence complaint against the Defendant, Iowa Health Systems dba UnityPoint Health and Trinity Medical Center dba QCM Pain Management.").

To demonstrate that issues of fact exist on a negligence claim at summary judgment, DeVooght must present evidence of a duty owed to him, a breach of that duty, and injuries proximately caused by the breach of the duty. See e.g., Guvoenoz v. Target Corp., 2015 IL App (1st) 133940 ¶ 89, 30 N.E.3d 404, 423 (Ill. App. 1st Dist. 2015). DeVooght fails to present evidence on any element. The Defendants, as his healthcare providers, clearly owed a duty to keep accurate records. Dr. Panozzo's August 8, 2013 Letter and Dr. Wagle's December 8, 2014 Treatment Note were accurate. The Defendants, therefore, did not breach this duty. The Defendants owed DeVooght a duty to keep his records confidential. They did so. The records were provided to the Social Security Administration, but only on DeVooght's authorization to support his claim for Disability Benefits. The Defendants did not breach this duty of confidentiality.

DeVooght seems to argue that the 2018 Letter created a duty in the Defendants to correct the ALJ's erroneous reading of the medical records. He cites no authority for this proposition and the Court is not aware of any. The Defendants properly released the records either to DeVooght or to the ALJ on DeVooght's authorization. The Defendants are not obligated to monitor third parties, such as the ALJ, to see if such parties can read the records correctly. The 2018 Letter did not create a duty to act to correct the ALJ's error. See Restatement (Second) of Torts, § 314 ("The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."). DeVooght fails to present evidence that Defendants owed him a duty to correct the ALJ's erroneous reading of DeVooght's medical records. He therefore also presents no evidence of a breach of duty or injuries proximately caused by a breach. The Defendants are entitled to summary judgment on DeVooght's negligence claim.

THEREFORE, IT IS ORDERED that Defendants Iowa Health Systems d/b/a UnityPoint Health and Trinity Medical Center d/b/a QCM Pain Management's Motion for Summary Judgment (d/e 81) is ALLOWED, Plaintiff Scott Jeffrey DeVooght's Motion for Summary Judgment (d/e 84) is

DENIED.  Judgment is entered in favor of Defendants and against Plaintiff.

THIS CASE IS CLOSED.

ENTER:   May 20, 2021

                         s/ *Tom Schanzle-Haskins*
                         TOM SCHANZLE HASKINS
                         UNITED STATES MAGISTRATE JUDGE